UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**MICHAEL G. LEVINE,**

    Plaintiff,

  **-vs-**　　　　　　　　　　　　　　　　　　　　**Case No. 13-C-498**

**JPMORGAN CHASE & CO.,**

    Defendant.

---

## DECISION AND ORDER

---

Michael Levine claims that JPMorgan Chase & Co. ("Chase") failed to conduct a reasonable investigation into alleged credit report inaccuracies in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681. Chase moves for summary judgment. For the reasons that follow, this motion is granted.

**I.    Background**

Levine is a real estate lawyer who maintains an office at 111 East Wisconsin Avenue in downtown Milwaukee, a building commonly known as the Chase Bank building. One of Levine's companies is an S-Corporation called Next Generation Real Estate. On or about July 10, 2009, Levine and Next Generation entered into a Credit Sale Agreement to finance the purchase of a 2007 Mercedes Benz E350. Levine signed the agreement in his personal capacity and also on behalf of Next Generation. Pursuant to the agreement, Levine and Next Generation were required, jointly and severally, to make 54 monthly payments of $538.01. These payments were due on the 24th of each month, starting September 24, 2009.

The Credit Sale Agreement was assigned to Chase. Chase sent monthly account statements and payment reminders to Levine at his business address as a courtesy. Such reminders are not required by the agreement. The first monthly statement was included in Chase's "welcome packet." Among other things, the welcome packet explained how to read the monthly statement and how to make payments. It also stated in a boxed-in section: "**Notice of Furnishing Negative Information to Credit Bureaus:** We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report." This warning was repeated on all subsequent monthly statements.

Levine claims that he never received the welcome packet. Moreover, Levine claims that he did not receive monthly billing statements for September or October 2012, and that he didn't receive the November statement until December 6 via mail. Levine also claims that he enrolled in online banking in or around July 2012, but Chase has no record of such a request. Levine did not make the September and October payments until November 8, 2012. Chase representatives placed three collection calls — on October 20, October 29, and November 3 — after his account was past due but before reporting the delinquencies. Levine has no record or recollection of receiving such calls. Levine claims that he was completely unaware of the missing payments until he saw a copy of his credit report and discovered the missing payments.

At the end of each month, Chase automatically submits borrowers' payment status

- 2 -

for that month to the credit bureaus. If a borrower failed to make a payment, the report reflects that fact. Chase understands its obligation to accurately report credit information to credit bureaus and understands that it cannot, for instance, report to the credit bureaus that a payment was timely made when, in fact, it was delinquent. Consistent with this policy and practice, Chase reported Levine's failure to make his September and October 2012 payments to the credit bureaus. These missed payments resulted in Chase reporting to the credit bureaus, under its standard procedure, that Levine's account was delinquent by more than 30 days (a code "71" on the Credit Bureau Report). Subsequent reports reflected one delinquent payment of more than thirty (30) days past due as of December 1, 2012, and two as of January 1, 2013.

In November 2012, someone at U.S. Bank told Levine that his credit score was too low to refinance a commercial real estate project. The real estate project had no current debt. Rather, Levine wanted to borrow against the properties and use the cash to pay down other lines of credit. Levine claims that the only blemishes on his credit report were the missed payments on the Credit Sale Agreement. Therefore, Levine blames Chase for his lower-than-expected credit score.

On November 8 and 9, 2012, Levine complained to the Chase call center that his credit history should be changed as a "courtesy." Levine explained that he did not receive billing statements for September or October and that he relied upon the statements to make his monthly payments. Chase responded via letter dated November 16, 2012, which

- 3 -

stated that "payments are reported by Chase Auto Finance to the Credit Reporting Agencies as they are actually received." Because Levine actually missed payments in September and October, and Levine's complaint could not be verified, Chase could not change its reporting information.

On December 6, 2012, Levine again complained to Chase directly about his delinquent payments and asked Chase to waive the payment delinquencies in an attempt to fix his credit score. This generated a second declination letter which stated that Levine's dispute was "resolved." Levine continued to call Chase in an attempt to dispute the delinquent payments and his credit score. After investigating further, Chase confirmed that Levine's September and October payments were late, and Chase could not waive the delinquency because Chase did not err when it sent accurate payment information to the credit bureaus. On January 8, 2013, Chase closed its investigation regarding Levine's dispute.

In addition to the disputes Levine brought to Chase directly, he also filed a total of six (6) indirect complaints with the credit bureaus. In doing so, the credit bureaus generated automated computer dispute verification requests, also known as "ACDVs," requesting that Chase verify its reports to the Bureaus. In response to these indirect complaints, Chase assigned each complaint to a Chase employee in the credit department, known as a processor, who verified the reported information and, where appropriate, made modifications to Levine's reported account status. The account was coded to reflect that it

was "in dispute" by the consumer.

Specifically, on December 7, 2012, Chase modified the information reported to the credit bureaus on Levine's account to reflect a compliance condition code of "CCC updated to XH" – which means the account was "in dispute" but resolved by the credit furnisher. A third party reading of Levine's credit report after Chase made modifications in response to Levine's indirect dispute complaints would note that the account was coded delinquent as of October 31, 2012 (because the September 1 payment was more than thirty (30) days past due). As of November 30, 2012, the account had been brought current but the September delinquent payment appeared in the payment history. As of December 31, 2012, two delinquent payments were reflected in the account history, but the account had been coded "XH" as "in dispute" by the customer and resolved by the credit furnisher. These modifications to the information Chase reported to the bureaus on Levine's account were reinvestigated, verified and confirmed by Chase's credit bureau team lead.

## II.     Analysis

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The plain language of the rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must accept as true the evidence of the nonmovant and draw all justifiable inferences in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is appropriate only if, on the record as a whole, a rational trier of fact could not find for the non-moving party. *Rogers v. City of Chi.*, 320 F.3d 748, 752 (7th Cir. 2003).

When a consumer reporting agency provides notice of a dispute, the furnisher (i.e., Chase) must (1) conduct an investigation with regard to the disputed information; (2) review all relevant information provided to it by the consumer reporting agency; (3) report the results of the investigation to the agency; and (4) if the information is found to be inaccurate or incomplete, report the results to all consumer reporting agencies to which it originally provided the erroneous information. 15 U.S.C. § 1681s-2(b). The reasonableness of this type of investigation is a "factual question normally reserved for trial; however, summary judgment is proper if the reasonableness of the defendant's procedures is beyond question." *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005).

As an initial matter, Levine's opposition to Chase's motion for summary judgment amounts to his unsupported assertion that Chase's procedures were unreasonable. Levine must do more. For example, the First Circuit granted a furnisher's motion for summary judgment on a § 1681s-2(b) claim because the plaintiff "presented no evidence that the procedures employed . . . to investigate the reported disputes were unreasonable." *Chiang*

*v. Verizon New England, Inc.*, 595 F.3d 26, 38 (1st Cir. 2010). By contrast, the "only evidence" on that point was an "employee's uncontested affidavit detailing the procedures" which were, "on their face, not unreasonable." *Id.* So it is here. Levine didn't even depose the credit specialists who investigated his complaint. Chase's procedures, which it followed in the instant case, are reasonable on their face. ECF No. 28, Declaration of Crystal Urista, Chase's CB Indirect Dispute Procedures, Ex. C.

More than that, in evaluating Levine's claim, it is important to note that Chase is *required* to report delinquencies. § 1681s-2(a)(5). Levine cannot and does not dispute that his account was delinquent. Levine insists that the delinquencies weren't his fault because he relied upon Chase's "custom and practice" of sending monthly statements as a reminder that prompted him to make his monthly payment. In this context, it is difficult to fathom how Chase's investigation could be considered unreasonable. The "pertinent question" is whether the furnisher's procedures were "reasonable in light of what it learned about the nature of the dispute from the CRA's notice of dispute." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009). Chase's investigation simply confirmed that Levine failed to make timely payments that were due and owing. *Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030 (D. Minn. 2010) (if a furnisher "conducts an investigation, that investigation results in verification of the completeness and accuracy of the challenged information, and the challenged information *is*, in fact, complete and accurate, then . . . § 1681s-2(b) has [not] been violated") (citing *Chiang*, 595

- 7 -

Case 2:13-cv-00498-RTR     Filed 07/08/14     Page 7 of 11     Document 38

F.3d at 37-38) (emphasis in original).

Beyond inaccuracy, a furnisher's duty to issue a corrective report is triggered if the investigation "finds that the information is *incomplete* or inaccurate." § 1681s-2(b)(1)(D) (emphasis added). "In so mandating, Congress clearly intended furnishers to review reports not only for inaccuracies in the information reported but also for omissions that render the reported information misleading. Courts have held that a credit report is not accurate under FCRA if it provides information in such a manner as to create a materially misleading impression." *Saunders v. Branch Banking & Trust Co. of Virg.*, 526 F.3d 142, 148 (4th Cir. 2008). Thus, a credit entry can be "incomplete or inaccurate" under the FCRA "because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Gorman*, 584 F.3d at 1164 (quoting *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998)).

What Levine really seems to want is an admission that Chase is at fault for his missing payments. Such an admission, in and of itself, would create a materially misleading impression. On the other hand, Chase's report about Levine's delinquencies was not patently incorrect, nor was it materially misleading. As one court observed, "it cannot be the case that a furnisher violates the FCRA every time it investigates a debt, foreclosure, or similar information but fails to report that the debt or foreclosure is disputed by the consumer." *Mason v. Chase Home Finance, LLC*, No. 11-04144 (SRC),

- 8 -

2014 WL 37219, at *5 (D.N.J. Jan. 6, 2014). Levine's payments were due monthly, and he made those payments repeatedly over the life of the loan. Levine's duty to make a payment was not somehow excused if he did not receive a statement for that month. Levine's dispute over the debt is completely meritless, and a furnisher "does not report 'incomplete or inaccurate' information within the meaning of § 1681s-2(b) simply by failing to report a meritless dispute, . . ." *Gorman* at 1163. This is because "reporting an *actual debt* without noting that it is disputed is unlikely to be material misleading. It is the failure to report a bona fide dispute, a dispute that could materially alter how the reported debt is understood, that gives rise to a furnisher's liability under § 1681s-2(b)." *Id.* (emphasis added). Chase's report is not rendered "incomplete or inaccurate" by virtue of Levine's disingenuous dispute.

Even if Chase's investigation was somehow considered unreasonable, Levine failed to create an issue of fact as to whether this alleged violation actually harmed him. "Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages.'" *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001). Levine has no idea how his credit score was calculated, and he offered exactly zero evidence in that regard. Also, the only evidence in the record regarding the alleged impact of Levine's lower credit score is U.S. Bank's November 8, 2012 denial of his re-financing application. At that point, Chase's duty to investigate under § 1681s-2(b) had yet to be triggered. Chase's later investigation,

- 9 -

such as it was, could not have caused this harm.[1] Aside from this temporal limitation, "it is difficult to see how a plaintiff could prevail on a claim for damages based on an unreasonable investigation of disputed data without a showing that the disputed information was, in fact, inaccurate." *Chiang* at 38.

Finally, Chase notes that it will be moving for attorney fees under §1681n(c), which provides for such an award upon a finding that an "unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, . . ." The Court stretched pretty far to find a plausible claim in Levine's various pleadings, but as it turns out, Levine has no case. Indeed, the summary judgment record strongly suggests that Levine's animosity towards Chase blinded him to the reality that he has no one to blame but himself for his delinquent car payments. The Court will refrain from entering judgment until Chase's motion for attorney fees, if filed, is resolved. *Passananti v. Cook Cnty.*, 689 F.3d 655, 661 (7th Cir. 2012) ("district courts have ample discretion to manage their cases and to delay entry of judgment if there are sound reasons to do so").

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. Chase's motion for summary judgment [ECF No. 26] is **GRANTED**; and

---

[1] Levine also failed to mitigate his damages because, so far as the Court is aware, Levine did not renew his U.S. Bank application or pursue financing at other lending institutions once the payment delinquencies were disputed on his credit report.

2. Chase's motion for attorneys' fees should be filed within **thirty (30) days** of the date of this Order. If no such motion is filed, the Court will enter judgment at the expiration of this time period.

Dated at Milwaukee, Wisconsin, this 8th day of July, 2014.

                                                                        **BY THE COURT:**

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**